IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMEEN MOHAMMAD ALBKRI, *et al.*,  )<br>)<br>)<br>*Petitioners/Plaintiffs*,  )<br>)<br>)<br>v.  )<br>)<br>GEORGE W. BUSH, *et al.*,  )<br>)<br>*Respondents/Defendants.*  ) | MEMORANDUM OF POINTS<br>AND AUTHORITIES IN<br>SUPPORT FOR MOTION<br>FOR PRESERVATION ORDER<br><br>Index No. 05-1639 (RBW) |

### MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Petitioners Ameen Mohammad Albkri ("Detainee Ameen Mohammad Albkri") and Ali Saleh Albkri ("Next Friend Ali Saleh Albkri") (sometimes, collectively, "Petitioners"), through their undersigned counsel, respectfully move this Court to Order Respondents to preserve and maintain all evidence, documents, and information regarding the interrogations, captivity, reasons for detention, and potential torture, mistreatment, and abuse of Detainee Ameen Mohammad Albkri at the Guantanamo Bay detention facility, and to preserve and maintain all evidence, documents, and information relating or referring to Petitioners.[1]

A preservation order is critical to the fair adjudication of this case, because (1), the undersigned counsel has applied for, and is waiting for, security clearance from by the Department of Justice and the Federal Bureau of Investigation. Presumably, this clearance will allow the undersigned counsel to have access to materials and information pertaining to Petitioners, including, but not limited to, the factual evidence leading to a purported

---

[1] As used in this motion, "documents" has the meaning provided under Fed.R.Civ.Pro. 33.

determination by a Combatant Status Review Tribunal ("CSRT") that Detainee Ameen Mohammad Albkri is an "enemy combatant" -- as that term is used by Respondents. A preservation order would protect Petitioners from any harm related to the potential destruction or loss of evidence related to the detention of Detainee Ameen Mohammad Albkri during the period that his counsel's application for clearance is being reviewed; (2) Respondents, in communications with the undersigned counsel, have stated that they intend to seek a stay in this matter (and have sought and received stays of the prosecution of proceedings in other similar habeas actions) and a preservation order would protect evidence related to the detention of Petitioner Ameen Mohammad Albkri while the issue of the stay is considered by the Court (and the parties) and further protect Petitioners in the same fashion if a stay is issued; and (3) because Respondents have refused to provide all relevant evidence and information relating to detainees in other matters or in response to applications made to Respondents under the Freedom of Information Act by civil rights organizations such as the American Civil Liberties Union, a preservation order would protect all available evidence while the issue of its production is determined in the FOIA actions, this action, and other habeas actions.[2]

---

[2] Pursuant to Loc. Civ. R. 7(m), the undersigned conferred with Respondents' counsel Preeya Noranha on October 12, 2005 and was informed that proposals by the undersigned would be considered but Respondents were not prepared to consent to the current motion.

## BACKGROUND

**The Detention Of Petitioner**
**Ameen Mohammad Albkri**

The following facts are stated upon information and belief of counsel.[3] Detainee Ameen Mohammad Albkri is a prisoner at Guantanamo Bay Naval Station, Cuba ("Guantanamo"). He is a citizen of Yemen and a civilian who, as a result of having been wrongly classified as an "enemy combatant" by the President of the United States, is being held as a prisoner in military custody. He has been incarcerated there for about three years without charges. During that time he has had no access to counsel and has otherwise been held virtually incommunicado. He has filed a petition for habeas corpus with this court under 28 U.S.C. §2241 challenging his detention.

According to a statement given by Next Friend Ali Saleh Albkri to an attorney with the Center for Constitutional Rights ("CCR"), Detainee Ameen Mohammad Albkri is approximately 35 years old and has worked in precious stones (in Madagascar) and in the shrimp industry (in Bangkok). He is fluent in English and holds a bachelor's degree in Business. He has three children – Malik (approximately 10 years old), and two others. His wife and children are with his father-in-law in the Sudan.

---

[3] Almost of all of the information pertaining to the detainment of Petitioner is in the control of the Respondents. Counsel for Petitioners has only been able to obtain the name of the detainee, the country of origin, the approximate age, and the names of some family members – and all of this information has been offered or supplied to Respondents for the purposes of identifying the detainee.

Detainee Ameen Mohammad Albkri was in Yemen on September 11, 2001 and was not a participant or sponsor or otherwise involved in the September 11, 2001 attacks on the United States or in any aggressive activities against the United States.

Detainee Ameen Mohammad Albkri was identified by his family on a list of Guantanamo detainees from Yemen known to Petitioner's family as the "September 26 list." Detainee Ameen Mohammad Albkri was seen by his father on television after several prisoners were released from Bagram, but he never arrived home. It is for this reason that his family believes he is in Guantanamo.

In his petition, Detainee Ameen Mohammad Albkri seeks judicial review of, among other issues, the determination by the CSRT that he is an "enemy combatant," as that term is used by Respondents, and judicial review of his treatment while detained. Petitioner needs the requested preservation order to preserve his capacity to challenge the determination of the CSRT tribunal and the conditions of his confinement and to preserve and protect the Civil Liberties that this Court and the Supreme Court have stated are afforded to Petitioners.

**The Scope Of The Requested Order**

Without limiting the breadth of the requested Preservation Order, Petitioners seek preservation of specific categories of documents as set out in Exhibit A, all of which relate to the detention of Ameen Mohammad Albkri. Petitioners request that the Preservation Order specifically prevent Respondents (or any agent of Respondents) from destroying any of the categories of documents identified therein, as these records are crucial to pursuing Petitioners' claims. The Government should be required to preserve them pending a resolution of this matter. Until the Court of Appeals clarifies the matter, no one knows exactly what procedure and evidentiary rules will govern the eventual determinations of "enemy combatant" status

which the Supreme Court said in *Rasul v. Bush*, 321 F.3d 1134 (2004), must underlie lawful imprisonment. Whatever these rules may be, the statements made by prisoners to their captors and the conditions of their confinement will certainly be relevant.

## ANALYSIS

**This Court Is Empowered To Issue The
Requested Preservation Order When, As Here,
It Is Established That The Requested Order
Is Necessary And Not Unduly Burdensome**

This Court is empowered to enter a preservation order when circumstances warrant it. *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 n.8 (2004); *see also United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 21, 23 (D.D.C. 2004). The court in *Pueblo of Laguna* set forth a two-part test to determine when a preservation order should issue. It required that the party seeking "a preservation order demonstrate that it is [1] necessary and [2] not unduly burdensome." *Pueblo of Laguna*, 60 Fed. Cl. at 138.[4]

---

[4] Petitioners need not meet the burdens associated with a preliminary injunction. As the Court of Federal Claims explained in *Pueblo of Laguna*, "[a] document preservation order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery." 60 Fed. Cl. at 138 n.8. Although such pretrial and discovery orders take the basic form of an injunction (an order to do or not to do something), courts need not observe the rigors of the four-factor analysis ordinarily employed in issuing injunctions. *Jarallah Al-Marri v. Bush*, Civ. No. 04-2035; *see also Pueblo of Laguna*, at 138 n.8 (court's case management power, rather than power to enter injunction, is basis for preservation order); *Casey v. Planned Parenthood*, 14 F.3d 848, 854 (3d Cir. 1994) (distinguishing such pretrial orders from injunctions for appeal purposes). "In the court's view, such an approach [requiring the movant to met the burden normally required for an injunction] would be decidedly to put the cart before the horse") *Pueblo of Laguna*, at 138 n.8.

**A Preservation Order Is Necessary
In Light Of Abundant Reports That
<u>Relevant Information Is Not Being Retained</u>**

The first prong of the test set forth in *Pueblo of Laguna*, 60 Fed. Cl. at 138 – that the requested order be necessary – has clearly been met: there is legitimate concern that Respondents will not retain relevant, yet sensitive, evidence it now possesses about the detention, interrogations, torture, treatment, and abuse of the Petitioner and other similarly-situated detainees now at Guantanamo. The FBI has produced records pursuant to a Freedom of Information Act lawsuit by the American Civil Liberties Union that document efforts by the military to "cover up" evidence of the physical abuse of detainees. *See* Urgent Report, dated June 25, 2004 (Exhibit B). Specifically, FBI emails confirms that unnamed individuals "observed numerous physical abuse incidents . . . includ[ing] strangulation, beatings, placement of lit cigarettes into the detainees['] ear openings, and unauthorized interrogations." *Id.* at 2.[5] The email further reports that unnamed individuals "were engaged in a cover-up of these abuses." *Id.* The specific "cover-up efforts" were identified in the email, but redacted before it was produced. *Id.* The New York Times also has reported that the military's own investigations into detainee abuse were harmed because "crucial witnesses were not interviewed, documents disappeared, and at least a few pieces of evidence were mishandled." Tim Golden, "Army Faltered in Investigating Detainee Abuse," *The New York Times*, May 22, 2005, at A1

---

[5] In addition, *The New York Times* reported that two prisoners in military custody had been murdered by their U.S. military jailers. *Id.* This comes on top of numerous reports of torture, prisoner kidnapping (rendition), and ingenious physical and psychological abuse of prisoners in military custody in connection with our "war on terror." Tim Golden, "Army Faltered in Investigating Detainee Abuse," *The New York Times*, May 22, 2005, at A1 (Exhibit C).

(Exhibit C) (referencing "confidential documents from the investigation obtained by *The New York Times*").

In light of the above, the first prong of the requirement for a preservation order – that such an order be necessary – is clearly present.

**A Preservation Order Would Not Be**
**Unduly Burdensome On Respondents**

The second prong of the test for issuance of a preservation order – that the order be "not too burdensome" – has also been met. The District Court, in entering a previous order, specifically found that "entering a preservation order [against Respondents] will inflict no harm or prejudice upon them." *Jarallah Al-Marri v. Bush*, Civ. No. 04-2035 (GK).

The loss of evidence regarding Ameen Mohammad Albkri's detention, captivity, and possible mistreatment or torture would irreparably harm Petitioners. It could deprive Petitioners of proof that the present imprisonment and deprivation of liberty is unlawful. In contrast, it would be no burden at all on the Government to preserve this evidence. Therefore, the Court should enter an order requiring the Government to preserve all information about the detention and treatment of the detainees now at Guantanamo, as well as all information regarding the recommendations to continue their imprisonment or release and repatriate them.

**A Preservation Order Should**
**Issue Under The Doctrine**
**of Collateral Estoppel**

Respondents have had a full and fair opportunity to oppose a motion for a nearly identical Order in *Jarallah Al Marri v. Bush*, Civ. No. 04-2035 (GK), and in *Abdul-Salam Gaithan Mureef Al-Shiry v. Bush*, Civ. No. 05-0490 (PLF). In each case, the District Court issued an Order requiring preservation of evidence similar to the order sought here. *See Jarallah Al Marri v. Bush*, Civ. No. 04-2035 (GK) (March 7, 2005) (Exhibit D); *Abdul-Salam Gaithan Mureef Al-*

*Shiry v. Bush*, Civ. No. 05-0490 (PLF) (March 23, 2005) (Exhibit E). Under familiar principles of collateral estoppel, this Court should issue a similar order. *See Parklane Hosier Co. v. Shore*, 439 U.S. 322, 331-33 (1979).

## CONCLUSION

WHEREFORE, for the foregoing reasons, the motion should be granted. A proposed order is attached hereto.

Dated: October 18, 2005

*Of Counsel*:

Barbara Olshansky (NY #0057)
Admitted *pro hac vice*
CENTER FOR CONSTITUTIONAL
   RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

Respectfully submitted,

_____
Ian Wallach (IW8631)
  Admitted *pro hac vice*
21 Quarterdeck Street, Unit A
Marina Del Rey, CA 90292
Tel: (310) 822-1587
Fax.: (310) 823-3458

*Counsel for Petitioners*