IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMEEN MOHAMMED ALBKRI, et al., ) <br> ) <br> Petitioners, ) <br> ) <br> v.    ) <br> ) <br> ) <br> GEORGE W. BUSH, ) <br> President of the United States, et al., ) <br> ) <br> Respondents.   ) | Civil Action No. 05-1639 (RBW) |

PETITIONER'S REPLY TO "RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION FOR PRESERVATION ORDER"

### Procedural History

Petitioner Ameen Mohammad Albkri ("Albkri" or "petitioner") is an inmate at the Guantanamo Bay military base ("Guantanamo") who recently filed a Petition for habeas corpus.[1]  I, his undersigned counsel, have not yet had the opportunity to meet with Albrki or review any materials related to his detention.  Petitioner moved for an Order to preserve evidence regarding the capture, detention, interrogation, and potential mistreatment (including possible torture) of petitioner.[2]  Respondents filed an opposition, and this reply followed.

---

[1] *Ameen Mohammad Albkri, et al., v. Bush, et al.*, Index No. 05-1639, Petition filed August 15, 2005.

[2] Memorandum of Points and Authorities In Support For Motion For Order of Preservation, *Ameen Mohammad Albkri et al., v. Bush, et al.*, Index No. 05-1639, Docket No. 5.

1

## Respondents' Opposition

In their opposition, respondents argue that the preservation order should not issue because respondents believe that (1) a preservation order is subject to the standard for issuance of a preliminary injunction (and not the less rigorous standard recently set forth for preservation orders) that respondents maintain has not been met; (2) even though evidence has been uncovered suggesting the destruction of evidence related to mistreatment of detainees by respondents, that evidence should not be considered because it refers to cover-ups in respondents' military camps in Iraq and Afghanistan and does not specifically mention Guantanamo; (3) the order is not necessary because respondents plan to retain the information and materials anyway, for investigations into potential misconduct of respondents' agents resulting in mistreatment to prisoners; (4) (despite stating their intention to retain the materials at issue for internal investigations) respondents argue that an order that they retain the materials at issue would be unduly burdensome; and (5) two prior orders of the Court granting identical relief sought by petitioners herein are not relevant to this motion.

Petitioner, in this reply, disagrees.

ARGUMENT

I.   A Movant Seeking A Preservation Order
     Must Only Establish That The Order
     Is Necessary And Not Unduly Burdensome.
     The Request Is Not Subject To The More Stringent
     <u>Requirements Governing Issuance Of A Preliminary Injunction</u>

This Court clearly has the power to issue the requested orders of preservation.[3] To avoid such issuance, respondents rely primarily on unpublished decisions, and one 1966 decision, for the premise that the standard applied to a motion for an order of preservation is that applied to a motion for a preliminary injunction (respondents' opposition at 3-4). This is incorrect. The United States Court of Federal Claims clarified the appropriate standard in *The Pueblo of Laguna v. United States*, 60 Fed. CL. 133, 138 n.8 (2004):

> Other courts have held that the requirements for issuing an injunction must be satisfied before a preservation order may issue. *See, e.g., Madden v. Wyeth*, 2003 U.S. Dist. LEXIS 6427, 2003 WL 21443404, at *1 (N.D.

---

[3] *The Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135-36 (2004) ("Decisional law recognizes yet another inherent power: the ability to order evidence preserved. To be sure, the "case law imposes a 'duty to preserve material evidence . . . not only during litigation but also . . . [during] that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation'") (*citing Renda Marine, Inc. v. United States*, 58 Fed. Cl. 57, 60 (2003)) (*quoting Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001)); *See also Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998); *see generally* Adam I. Cohen & David J. Lender, Electronic Discovery: Law and Practice § 3.01 (2004)").

The habeas statute is largely silent about procedures for developing the case. Habeas is neither a civil action not a criminal action. It is an action brought in a civil court (28 USC § 2241) yet the "only issue it presents is whether [a] prisoner is restrained of his liberty by due process. <u>Black's Law Dictionary</u>, (5[th] Ed., 1979), p. 638. There are no Rules of Habeas Corpus. Beyond the few procedures provided in the statute, the power of the Court to make rules for habeas cases derives from 28 U.S.C. 1651, the All Writs Act, which empowers the courts in habeas cases to "fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage." *Harris v. Nelson*, 394 U.S. 286, 299 (1969).

3

Tex. Apr. 16, 2003); *Pepsi-Cola Bottling Co. of Olean v. Cargill, Inc.*, 1995 U.S. Dist. LEXIS 19735, 1995 WL 783610, at * 3-4 (D. Minn. Oct. 20, 1995); *Humble Oil & Refining Co. v. Harang*, 262 F. Supp. 39, 42 (E.D. La. 1966). The court, however, believes that the more recent of these decisions ignore significant changes made to the Federal Rules of Civil Procedure since the 1960s, further establishing the case management powers of judges. In the court's view, a document preservation order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery. *See Mercer v. Magnant*, 40 F.3d 893, 896 (7th Cir. 1994). While such pretrial and discovery orders take the basic form of an injunction (an order to do or not to do something), the decisional law suggests that, in issuing them, courts need not observe the rigors of the four-factor analysis ordinarily employed in issuing injunctions. *See Reich v. Muth*, 1993 WL 741997, at *1-2 (E.D. Va. July 28, 1993); *Fed. Election Comm'n v. GOPAC, Inc.*, 897 F. Supp. 615, 617-18 (D.D.C. 1995); *see also Casey v. Planned Parenthood of South-eastern Pa.*, 14 F.3d 848, 854 (3d Cir. 1994) (distinguishing such pretrial orders from injunctions for appeal purposes); *Matter of Establishment Inspection of Skill Corp.*, 846 F.2d 1127, 1129 (7th Cir. 1988) (same). the court's view, the same ought to hold true for preservation orders. In particular, contrary to defendant's claim, the court sees no reason for it to consider whether plaintiff is likely to be successful on the merits of its case in deciding whether to protect records from destruction. In the court's view, such an approach would be decidedly to put the cart before the horse.

It is clear that the requirements for an order of preservation are (a) necessity; and (b) no undue burden – both of which are shown below to be present. However, petitioner also maintains that the standard for a preliminary injunction has also been met.

**I.A.    The Preservation Order Is Necessary**

Petitioner has made non-frivolous allegations that he and other detainees are at high risk of undue physical and mental abuse, including torture. Petitioner previously referenced an article in the New York Times and government records showing an attempt to "cover up" evidence of physical abuse of detainees.[4] Petitioner is also

---

[4] Tim Golden, "Army Faltered in Investigating Detainee Abuse," *The New York Times*, May 22, 2005, at A1, attached to Docket No. 5, Memorandum of Points and Authorities In Support For Motion For Preservation Order at Exhibit C and "Urgent Report" of FBI at Exhibit B.

attaching to this Reply the Supplemental Declaration of Julia Tarver, filed October 14, 2005, in Al-Joudi v. Bush, 05-0301 (GK) (Exhibit A). This Declaration describes in sickening detail the evidence of physical abuse of prisoners at Guantanamo that Ms. Tarver saw and heard during her visit in late September and early October of this year.[5] These observations, if accurate, are not only contrary to representations of respondents regarding allegedly-humane treatment of detainees, but are also beneath the standards of civility for which this country, and our judicial process, strives to achieve.

None of these allegations have been proved as of yet, but it is beyond any doubt that petitioner has made allegations which, *prima facie*, show that inmates at Guantanamo face a real risk of inhuman and degrading treatment.

Respondents, by contrast, have not offered a single fact about either petitioner, nor offered any factual assertions about conditions for prisoners at Guantanamo. They have criticized petitioner's allegations and they have described their policies and procedures, but they have not made a single allegation of historical fact about the treatment of any prisoner at Guantanamo. A preservation order will enable this Court to learn whether respondents are correct and atrocities are not occurring under respondents' watch, or the allegations offered by petitioner and other detainees have merit.

---

[5] Ms. Tarver reports that one of her clients was wincing in pain from lesions in his throat, said to be caused by forcible insertion of a large feeding tube into his stomach (para. 7). She tells of reports from another client that he was held without food or water for several days and then forcibly restrained and injected with unknown medications (para. 8); that another client reported forcible and painful insertion of a feeding tube while restrained, causing much bleeding and leaving him unable to speak for two days (para. 10); another force feeding tube insertion leading to internal bleeding and frequent vomiting (para. 11); and many other disturbing observations.

Surprisingly, respondents also argue that the order is not necessary because – while there has been a showing of cover-ups and document destruction at respondents' military bases in *Afghanistan* and *Iraq*, there has not been a showing of such cover-ups and document destruction in *Guantanamo* (respondents' opposition at 6) ("both exhibits relate to allegations of abuse of detainees in Iraq and Afghanistan, and do not concern the subject matter of this case, which solely involves detentions at Guantanamo"). Common sense instructs otherwise. Respondents fail to provide any reason for the Court to believe that document retention policies or occurrences are any better in respondents' military base in Guantanamo than in respondents' military bases in Iraq or Afghanistan.

Respondents are not presently under any duty to preserve evidence for this proceeding. They assert that they are "well aware of their obligation not to destroy evidence that may be relevant in pending litigation,"[6] but they give no citation for that proposition or a description of their policies or efforts being undertaken to preserve evidence related to the treatment, or potential mistreatment, of detainees (all of which are within the ambit of the habeas statute. *See Harris*, 394 U.S. at 299). Until this Court restrains respondents from destroying such evidence, they remain free to do so.

"[T]he destruction of evidence can lead to manifest unfairness and injustice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action and can increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence that may be less persuasive, less accessible or both." *The Pueblo of Laguna*, 60 CL. at 137 (*citing Trigon Ins. Co. v.*

---

[6] Respondents' Opposition at 6.

*United States*, 204 F.R.D. 277, 285 (E.D. Va. 2001); *In re Prud. Ins. Co.*, 169 F.R.D. at 616 ("Document destruction inevitably hinders the administration of justice")). A preservation order is of tremendous necessity in this action – when the very rights at issue – the due process and lives and well-being of an individual, is what is at stake.

### I.B.    Respondents Concede That The Requested Order Is Not Unduly Burdensome

Respondents claim that all the documents sought to be preserved by petitioner will be preserved anyway, for the purposes of internal investigations (respondents' opposition at 5) ("The types of documents sought to be protected could relate to pending or developing investigations that the government has initiated into possible misconduct in regard to mistreatment of detainees. Such investigations have served, and will continue to serve, as the basis for prosecutions or other corrective action wherever appropriate. *Respondents would not compromise those investigations or prosecutions by destroying or sanctioning the destruction of documents pertaining to such investigations. Furthermore, the ongoing detention and intelligence-gathering mission of the military at Guantanamo Bay should dispel any notion that respondents would destroy documents related to that mission*") (*emphasis added*). Respondents thereby concede that the requested preservation order is not unduly burdensome. Respondents cannot logically argue that (a) they will keep the documents for internal investigations of potential abuses; and (b) a Court order mandating the keep the same documents is overly burdensome.

II.  **Petitioner Withdraws The Argument That Respondents Are Barred From Relitigating These Issues On The Grounds Of Collateral Estoppel, Yet Maintain That This Court's Prior Orders Provide Further Support For Issuance Of The Requested Preservation Orders**

Having reviewed respondents' opposition and the case of *United States v. Mendoza*, 464 U.S. 154 (1984), petitioner concedes that the government is not barred from relitigating whether a preservation order should issue on the grounds of collateral estoppel.

That being said, the orders issued in *Al-Marri et al. v. Bush, et al.*, Civil Action No. 04-2035 (March 7, 2005, Kessler, *J.*) (*"Al-Marri"*) and *Al-Shiry et al., v. Bush, et al.*, Civil Action No. 05-0490 (March 23, 2005, Friedman, *J.*) (*"Al-Shiry"*) are recent opinions of this Court, on identical issues presently before this Court, and have persuasive effect on that basis alone. As the Court is aware, "Precedent" is defined as "[a]n adjudged case or decision of a court, considered as furnishing an example or authority for an identical or similar case afterwards arising or a similar question of law… A rule of law established for the first time by a court of a particular type of case and thereafter referred to in deciding similar cases." Black's Law Dictionary, (5th Ed., 1979), p. 1059. The decisions in *Al-Marri* and *Al-Shiry* involved identically-situated petitioners, identical respondents, identical requests, and resulted in nearly-identical orders. This Court should once again issue a preservation order -- not only because it has been shown to be necessary and not unduly burdensome to respondents, but also because respondents have failed to present any orders where a Judge of this Court disagreed with this Court's recent decisions in *Al-Marri* and *Al-Shiry*.

## CONCLUSION

The purpose for making procedural provisions in habeas cases is so that a fair and meaningful evidentiary hearing may be held. *Johnson v. Avery*, 393 U.S. 483. In view that (1) counsel for petitioners have been unable to meet with their clients or review materials related to their detention, (2) petitioner has made <u>prima facie</u> allegations of great risk of inhuman treatment, (3) respondents have pleaded no historical facts as to petitioner, other detainees, or as to events at Guantanamo, but only general descriptions of their policies and procedures, and 4) respondents have conceded their intention (and need) to retain the materials and information identified in the proposed preservation order; the Court is requested to exercise its discretion to grant the motion.

Dated: _11/8/05_    Respectfully submitted,

_____
Ian Wallach (IW8631)
  Admitted *pro hac vice*
21 Quarterdeck Street, Unit A
Marina Del Rey, CA  90292
Tel: (310) 822-1587
Fax.: (310) 823-3458

*Counsel for Petitioners*

*Of Counsel*:
Barbara Olshansky (NY #0057)
Admitted *pro hac vice*
CENTER FOR CONSTITUTIONAL
    RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499